WITTERS, Receiver, etc., *v.* SOWLES and others.

*(Circuit Court, D. Vermont.   October 5, 1887.)*

1. INSOLVENCY—NATIONAL BANKS—STATE LAWS.
    Among the assets of an insolvent national bank were three mortgages which
    were sought to be impeached by the assignees of the mortgagor as having
    been given in violation of the insolvency law of the state.   Plaintiff, receiver
    of the bank, claimed that the state law was inoperative upon the assets of a
    national bank, and was ineffectual to divest him of the title acquired by the
    mortgages.   *Held,* that the mortgages were governed by the state law, and
    the bank took them with all the limitations imposed by the laws of the state
    upon them.

2. SAME—PREFERENCES—LIMITATION OF TIME.
    Rev. Laws Vt. § 1860, provides that a conveyance made by an insolvent, or
    one in contemplation of insolvency, within four months before the filing of a
    petition of insolvency by or against him, made with a view to giving a pref-
    erence to certain of his creditors, shall be void.   It appeared that the mort-
    gages sought to be declared void were made three months before the filing of
    petition of insolvency by a creditor of the mortgagor; but the petition was
    left to be acted upon when requested, and not acted upon until nearly two
    months later, at the instance of another creditor.   *Held,* that the statute con-
    templated present judicial procedure on the filing of the petition, and the de-
    lay in acting upon the petition at the instance of the petitioning creditor
    brought the conveyances outside the purview of the statute.

In Equity.
*Chester W. Witters* and *Albert P. Cross*, for orator.
*Willard Farrington* and *Henry. A. Burt*, for defendants.

WHEELER, J. This bill is brought by the orator, as receiver of the First National Bank of St. Albans, against the defendant Sowles in his own right, and against the other defendants as assignees in insolvency of his estate, to foreclose three mortgages from him to the bank to secure debts to the amount of $60,000. The assignees defend on the ground that the mortgage is void as to them; and they have filed a cross-bill to have them set aside. The laws of the state provide that a person owing debts to an amount exceeding $300, who, among other things, makes conveyance of his property with intent to give preference to one or more of his creditors, shall or may be adjudged an insolvent debtor upon petition of his creditors; and that the creditors may, within 90 days thereafter, apply to the judge of the court of insolvency, setting forth the facts, who, on 10 days' notice to the debtor, may make an adjudication of insolvency of the debtor. Rev. Laws, § 1870. They also provide that if a person, being insolvent, or in contemplation of insolvency, within four months before the filing of the petition, with a view to give a preference to a creditor, makes a conveyance of his property to a person having reasonable cause to believe the other insolvent, or in contemplation of insolvency, and that the conveyance is made in fraud of the laws relating to insolvency, the same shall be void. Section 1860.

These mortgages were made on the seventeenth day of January, 1884. The record of the proceedings in insolvency, which resulted in an adjudication of the defendant Sowles an insolvent, and in making the other defendants assignees of his estate, shows that a petition of a creditor was sent by a clerk of the attorneys of the creditor to the judge of the court of insolvency, who, when it was presented, inquired what time they wanted fixed for a hearing, and the clerk answered, "File the petitions, and" one of the attorneys "will come and arrange as to the time of hearing;" that the petition was thus, on the twelfth day of April, 1884, filed, and remained on file without anything more being done about it until the thirty-first day of May, 1884, when another creditor appeared, and presented a petition, asking that notice be given, and this petition proceeded with, which was done, against an attempt of the first petitioning creditor to withdraw his petition. The making of these mortgages by Sowles, being insolvent, or in contemplation of insolvency, with intent to give a preference to the bank, was one of the acts of insolvency set forth in the petitions, and was the one upon which the adjudication of insolvency was made.

The bank failed on the eighth day of April, and a receiver was appointed on the twenty-second day of April, 1884. These mortgages were among the assets of the bank when they were taken possession of by the officers of the government, upon the failure. It is claimed on behalf of the orator that the distribution of the assets of an insolvent na-

tional bank, under the provisions of chapter 4, tit. 62, Rev. St. U. S., by virtue of which the assets of this bank are being collected by the orator for distribution, is a species of bankruptcy proceeding under the laws of the United States, against which the provisions of any state insolvency law are wholly inoperative; and that these provisions of the insolvency law of this state are ineffectual to divest him of the title acquired by these mortgages, which would, without question, be good and valid but for them. If these were proceedings under the state law to adjudge the national bank an insolvent, and distribute its assets, the claim that the state law was inoperative for that purpose would probably be well founded. But this state law is not invoked for any purpose connected with the distribution of the assets of the bank. The proceeding is the same as if the bank had remained solvent, and was still transacting business in the usual course. The question is one of title to the mortgaged property, between the receiver, under the laws of the United States, and the assignees, under the laws of the state,—to determine to which estate the property belongs. When that is settled, the distribution of the property will belong with the jurisdiction where the title is found to be, without reference to the other. The title is to be governed by any law applicable to it, and all such laws are to be respected in ascertaining whose it is. The bank took this mortgage with all the limitations that the laws of the state imposed upon it, the same as any individual would. The statute is a regulation of conveyances, which binds the title as to all persons claiming under them. *Knower* v. *Haines*, 31 Fed. Rep. 513. An examination of the case upon its merits is therefore necessary.

There is no fair question, and none made, but that at the time of the making of these mortgages Sowles was in fact insolvent. That it would probably create a preference, if left to become valid, he must have seen, and therefore it readily follows that he made them with a view to give a preference to the bank by them.

That the officers and agents of the bank had reasonable cause to believe that he was insolvent, and that the mortgages were made with that view, is a different question, and not, upon the evidence, so clear. He was, and for a long time had been, the cashier of the bank, and owned considerable of its stock, and of that of another neighboring bank, and had a large amount of real and personal property besides for a person in his business. He had lost heavily in stock speculations, but that the losses were great does not appear to have been known to them. There had been a run on the bank which had shaken its credit. The mortgages were devised to strengthen that. The officers appear to have had confidence in the bank, if they could restore its credit, and retain its business, and do not appear to have lost confidence in his responsibility. They did not desire or request the mortgages, and he did not wish to make them. They were advised to be made by the national bank examiner, and his advice was accepted and acted upon. His situation was not such that the officers of the bank were about to call upon him for security, but for the run on that; and, had that survived, he would

probably have survived also. The reasonable cause to believe, which the statute makes the ground for avoiding the mortgages, must be proved to have existed at that time, and is to be ascertained by what the officers of the bank then had before them, in sight, and cannot justly be inferred from what they now know, but did not then know. It is not clear that the defendants have shown enough in this behalf to defeat those mortgages.

If they had, it would remain to be seen whether the mortgages were made within four months of the filing of the petition of insolvency, according to the meaning of the statute. The creditor may apply to the judge for an adjudication of insolvency, which the judge may make on notice and proof. The application is to be made by the creditor to the judge, for the judge to act upon. Presenting a petition to the judge would be nothing, unless it should be presented to be acted upon as the judge should see fit. The control of it should be with the judge, and not remain with the petitioning creditor. There might be delay, circumstantial or incidental, and such delay might be suggested by the petitioner, without depriving the petition of the character of an active application; but this could properly only be when the petition is presented for action. Being in the possession of the judge is not enough; neither is possession by him with a filing upon it enough, for that is only his memorandum. The possession should be for present judicial procedure. In *Sage* v. *Wyncoop*, 104 U. S. 319, a voluntary petition in bankruptcy was prepared, and sent to the clerk, to be kept until he should be directed by telegraph to file and proceed with it. Rights of property affected by it turned upon the time when it was filed and proceeded with, pursuant to that direction. This petition was left with the judge, but not to be proceeded with until there should be further communication from the attorney of the petitioning creditor as to the time of hearing. The first thing to be done was to give notice to the alleged insolvent to appear and answer at some fixed time. This could not be done until a time should be fixed, and that was not to be done until the attorney moved, and therefore nothing was to be done until then. The petition was within the control of the petitioning creditor, and not within the control of the court, until the other creditor appeared, on the thirty-first day of May, and asked that it be proceeded with. None of this is gathered from proof, apart from the records of the insolvency court, but it all appears from that, and shows clearly that this petition was not understood by that court to be made in due course, and in the usual manner.

It is urged that all this was adjudged by the court of insolvency against the claim of the orator, and that the adjudication is conclusive. The court of insolvency retained the petition, the facts alleged in it were on appeal found to be true, and Sowles was adjudged insolvent. All that is included in this was conclusively settled, and is not now questioned, or to be questioned, here. Full faith and credit is to be given to that judgment everywhere. But that court had before it no question as to the title to this mortgaged property, nor as to the validity of the mortgages, and nothing was adjudged in regard to these matters. A

creditor to the requisite amount, under the insolvency law of the state, has the right, unquestionably, to prefer his petition, and put all conveyances, within four months previous, to the test of the provisions of that law; but no court has decided, so far as has been observed, that a creditor can put a petition on file, and retain control of it, without notice to the debtor, for weeks and months, and leave him in possession of his property to deal with as of full right, and then have notice given, and titles supposed to be good disturbed, which had stood much longer than that.

The value of the mortgaged property is so small in comparison with the debt that there can be no reasonable expectation of redemption; therefore the time of redemption should be made very short.

Let there be a decree of foreclosure, with right of redemption for 15 days after entry of the decree; and let the cross-bill be dismissed, with costs to the orator.